UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTA CHMARNEY, | ) | CIVIL ACTION NO. 4:20-CV-1268 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| *Acting Commissioner of Social Security* | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.     INTRODUCTION

Plaintiff Christa Chmarney, a resident of the Middle District of Pennsylvania who previously received Social Security benefits, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") in finding that Plaintiff is no longer disabled, and ending her benefits. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me upon consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED.

II.   BACKGROUND & PROCEDURAL HISTORY

I will discuss Plaintiff's lengthy contact with the Social Security Administration in two parts: (1) Plaintiff's initial disability finding, and (2) Plaintiff's new hearings following the Commissioner's decision that Plaintiff medically improved.

    A.   PLAINTIFF'S INITIAL FAVORABLE DISABILITY FINDING

On November 10, 2010, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 326; Doc. 13-6, p. 2). In this application, Plaintiff alleged she became disabled as of June 18, 2010, when she was twenty-nine years old, due to the following conditions: post-herpetic neuralgia, trigeminal neuralgia, chronic head and facial pain. (Admin. Tr. 202; Doc. 13-4, p. 2). Plaintiff claims that these symptoms occurred after she suffered a serious infection that damaged the nerves in her face. (*See* Admin. Tr. 183, Doc. 13-3, p. 103; Admin. Tr. 246, Doc. 13-5, p. 7). Plaintiff

alleges that the combination of these conditions affects her ability to lift, squat, walk, and complete tasks. (Admin. Tr. 373; Doc. 13-7, p. 20).[2] Further, Plaintiff describes her ailments as crippling, saying "[f]or the last $6^{1/2}$ years, I have spent most of my time in bed." (Admin. Tr. 415, Doc. 13-7, p. 62). Before the onset of her impairments, Plaintiff used to be a teacher and holds a master's degree in education. (Admin. Tr. 174; Doc. 13-3, p. 94).

On December 20, 2011, following the denial of her application at the initial level of review, Administrative Law Judge ("ALJ") Edward Brady issued a bench decision finding Plaintiff disabled beginning on June 18, 2010. (Admin. Tr. 236-40, Doc. 13-4, pp. 36-40). Plaintiff then began to receive disability benefits.

B.     THE COMMISSIONER REEVALUATES PLAINTIFF'S DISABILITY

Four years later, on October 13, 2015, the Commissioner reviewed the status of Plaintiff's disability and found that Plaintiff's disability ceased in October 2015. (Admin. Tr. 241, Doc. 13-5, pp. 2-4). On October 23, 2015, Plaintiff asked the Commissioner to reconsider the decision. (Admin. Tr. 244; Doc. 13-5, p. 5). On August 30, 2016, Disability Hearing Officer Jonathan Pass interviewed Plaintiff and her father and found that she was no longer disabled as of October 2015. (Admin.

---

[2] These limitations come from a 2015 function report. The record does not reflect Plaintiff's limitations in 2010.

Tr. 245-64, Doc. 13-5, pp. 6-25). After this adverse decision, on September 19, 2016, Plaintiff requested a hearing before an ALJ. (Admin. Tr. 268, Doc. 13-5, p. 29).

On December 15, 2016, Plaintiff had her first ALJ hearing on whether her conditions improved. (Admin. Tr. 169, Doc. 13-3, p. 89). Plaintiff, who was not assisted by counsel, appeared before ALJ Michelle Wolfe. (*Id.*). On February 27, 2017, ALJ Wolfe issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 217-219; Doc. 13-4, pp. 17-19). On April 8, 2017, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 297; Doc. 13-5, p. 58).

Almost one year later, on February 23, 2018, the Appeals Council remanded the case back to ALJ Wolfe. (Admin Tr. 234-35, Doc. 13-4, pp. 34-35). The Appeals Council identified two errors in ALJ Wolfe's 2017 decision: (1) she failed to consider whether Plaintiff was disabled between October 1, 2015 (date of medical improvement) and February 27, 2017 (date of ALJ's decision) and; (2) the record needed to be updated to include ALJ Brady's initial 2011 decision in the exhibits list. (*Id.*).

On remand, ALJ Wolfe convened another hearing on August 14, 2018. (Admin. Tr. 117, Doc. 13-3, p. 37). Plaintiff was not represented by counsel at this second hearing. (*Id.*). On January 30, 2019, ALJ Wolfe issued a decision denying Plaintiff's continued receipt of benefits because Plaintiff medically improved.

(Admin. Tr. 60-62, Doc. 13-2, p. 61-63). Following this adverse decision, Plaintiff sought the assistance of counsel, and on March 28, 2019, requested that the Appeals Council review ALJ Wolfe's decision. (Admin. Tr. 322-325, Doc. 13-5, pp. 83-86). Plaintiff did not submit new substantive information to the Appeals Council.[3]

On June 1, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-4; Doc. 13-2, pp. 1-4).

On July 23, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that ALJ Wolfe's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (*Id.*). As relief, Plaintiff requests that the Court reverse the Commissioner's decision and either award benefits or remand the case back to the Commissioner to conduct a new hearing. (*Id.*). Plaintiff further requests that the Court grant further relief as it deems proper, including an attorney's fee award pursuant to the Equal Access to Justice Act. (*Id.*).

On February 4, 2021, the Commissioner filed an Answer. (Doc. 12). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not

---

[3] The Appeals Council received four documents that ALJ Wolfe did not have at the time of her decision. Three of those documents were three separate requests for an appeal to the Appeals Council, and one document was from Plaintiff's attorney seeking an extension of time to file a brief to the Appeals Council. (Admin. Tr. 6; Doc. 13-2, p. 7).

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (*Id.*). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 18), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 22) have been filed. This matter is now ripe for decision.

III. STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security appeals.

    A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is still disabled, but whether the Commissioner's finding that Plaintiff is no longer disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.      S<small>TANDARDS</small> G<small>OVERNING THE</small> ALJ'<small>S</small> A<small>PPLICATION OF</small> T<small>HE</small> E<small>IGHT</small>-S<small>TEP</small> E<small>VALUATION</small> P<small>ROCESS</small> F<small>OR</small> C<small>ONTINUING</small> D<small>ISABILITY</small> R<small>EVIEW</small>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

After a claimant receives disability benefits, his or her entitlement to continued benefits may be reviewed periodically. During this evaluation, the Social Security Administration may find that the claimant is no longer entitled to benefits. 42 U.S.C. § 432(f). A key part of this analysis involves comparing the severity of the impairment at the time of the most favorable recent disability determination with

---

[4] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on November 15, 2018.

the current severity of that impairment. 20 C.F.R. §§ 404.1594(b)(7), (c)(1). In doing so, an ALJ uses an eight-step process. 20 C.F.R. § 404.1594(f).

At step one of this process, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1).

At step two of this process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1594(f)(2). If the ALJ finds that the claimant has a listed impairment at step two, the claimant's disability continues. *Id.* If the ALJ finds that a claimant does not have a listed impairment at step two, the ALJ proceeds to step three.

At step three, the ALJ determines whether "medical improvement" occurred. 20 C.F.R. § 404.1594(f)(3); *see also* 20 C.F.R. § 404.1594(b)(1) (defining "medical improvement" and providing examples). If the ALJ finds that medical improvement occurred, the ALJ proceeds to step four. 20 C.F.R. § 404.1594(f)(3). If no medical improvement occurred, the ALJ proceeds to step five. *Id.*

At step four, the ALJ determines whether the medical improvement is related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(4); *see also* 20 C.F.R. § 404.1594(b)(2) (defining medical improvement not related to the ability to work and providing examples) and 20 C.F.R. § 404.15294(b)(3) (defining medical improvement related to the ability to work and providing examples). If there is

medical improvement that is not related to the claimant's ability to perform work, the ALJ proceeds to step five. 20 C.F.R. § 404.1594(f)(4). If the medical improvement *is* related to the claimant's ability to perform work, the ALJ proceeds to step six. *Id.*

At step five, the ALJ determines whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions. *See* 20 C.F.R. § 404.1594(d) (first group of exceptions) and 20 C.F.R. § 404.1594(e) (second group of exceptions). If an exception from the first group (20 C.F.R. § 404.1594(d)) applies, the ALJ proceeds to step six. If an exception from the second group (20 C.F.R. § 404.1594(e)) applies, the claimant's disability ends. If no exceptions apply, the claimant's disability continues.

At step six, the ALJ determines whether all the claimant's current impairments, in combination, are severe. 20 C.F.R. § 404.1594(f)(6). If the ALJ finds that the combination of the claimant's current impairments are not severe, the claimant is no longer disabled. *Id.* If the ALJ finds that the combination of claimant's current impairments are severe, the ALJ proceeds to step seven. *Id.*

At step seven, the ALJ evaluates the claimant's residual functional capacity based on his or her current impairments to determine whether the claimant can engage in past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant can engage

in his or her past relevant work, his or her disability has ended. If the claimant cannot engage in his or her past relevant work, the ALJ proceeds to step eight.

At step eight, the ALJ determines (based on claimant's age, education, work experience and RFC) whether the claimant can do other work. 20 C.F.R. § 404.1594(f)(8). If the claimant can engage in other work, he or she is not disabled. If he or she cannot engage in other work, the disability continues.

The ALJ's determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.  DISCUSSION

    A.    ALJ WOLFE'S DECISION DENYING PLAINTIFF'S APPLICATION

In her January 2019 decision, ALJ Wolfe identified that the most recent favorable decision finding Plaintiff disabled (the "comparison point decision" or "CPD") was issued on December 20, 2011. (Admin. Tr. 66, Doc. 13-2, p. 67). As of the date the CPD was issued, Plaintiff had two medically determinable impairments: migraine headaches and atypical facial pain. (*Id.*).

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 20, 2011(Plaintiff's alleged onset date) and January 30, 2019 (the date the ALJ's decision was issued). (*Id.*). At step two, the ALJ found that since October 1, 2015, Plaintiff had one medically determinable severe impairment: chronic pain syndrome. (*Id.*). At step three, the ALJ found that medical improvement occurred on October 1, 2015. (*Id.*).

At step four, the ALJ found that the medical improvement in Plaintiff's disorder was related to her ability to work because it had decreased in severity to a point where Plaintiff had the RFC to perform work at all exertional levels, albeit with non-exertional limitations. (Admin. Tr. 67, Doc. 13-2, pp. 68).

The ALJ skipped step five because she found that Plaintiff's medical improvement was related to Plaintiff's ability to perform work. 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ found that, since October 1, 2015, Plaintiff continued to have a severe impairment or combination of impairments. (Admin. Tr. 67, Doc. 13-2, p. 68).

At step seven, the ALJ found that Plaintiff cannot perform her past relevant work as a teacher. (Admin. Tr. 73, Doc. 13-2, p. 74). The ALJ evaluated Plaintiff's RFC based on all her current medically determinable impairments identified at step two. She found that since October 1, 2015, Plaintiff had the RFC to perform the full range of work at all exertional levels, but with the following non exertional limitations:

> [s]he must avoid concentrated exposure to wetness, humidity, and hazards, including moving machinery and unprotected heights. She must avoid even moderate exposure to temperature extremes of cold and heat, and vibrations. She can do simple, routine tasks, but no complex tasks.

(Admin. Tr. 67-68, Doc. 13-2, pp. 68-69).

At step eight, the ALJ found that, considering Plaintiff's age, education, and work experience, and current RFC, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 74, Doc. 13-2, pp. 75-76). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following four representative occupations: telephone information clerk (DOT # 237.367-046), office helper (DOT

# 239.567-010), ticket seller (DOT # 211.467-030), patient transporter (DOT # 355.677-014). (*Id.*).

Plaintiff argues that the ALJ's decision is marred by the following three errors:

(1) The ALJ failed to discharge her duty to aid this pro se claimant in presenting her claim.
(2) The ALJ erred as a matter of law when she found that Plaintiff's disability had medically improved.
(3) The ALJ failed to assign significant weight to the opinions of the treating physicians for erroneous reasons.

(Doc. 22, pp. 3-4).

To resolve this case, I only need to discuss Plaintiff's second error: whether ALJ Wolfe erred in her analysis that Plaintiff medically improved because she failed to compare Plaintiff's recent medical records with the records that underlie ALJ Brady's 2011 decision.

### B. WHETHER ALJ WOLFE ERRED WHEN SHE FAILED TO COMPARE RECORDS

Plaintiff argues that ALJ Wolfe had to obtain, examine, and compare the records that ALJ Brady relied on in making his 2011 decision, with the medical records obtained after that decision. (Doc. 18, pp. 11-13). Plaintiff argues that ALJ Wolfe failed to compare medical records, and as such, ALJ Wolfe erred as a matter of law. (*Id.*). The Commissioner does not respond to this argument.

As explained earlier, in a continuing disability review case, the Commissioner may periodically review a claimant's disability determination. When deciding whether a claimant's impairments have improved, an ALJ must:

> *compare* the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time.

20 C.F.R. § 404.1594(c)(7) (emphasis added). If an ALJ finds that there has been an improvement, then they must decide whether the improvement led to an improved capacity to perform work. 20 C.F.R. § 1594(b)(3).

> Medical improvement occurs when there:
>
> is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).

20 C.F.R. § 404.1594(c)(1).

According to the Third Circuit, "[a] key part of this analysis involves comparing the severity of the impairment at the time of the most favorable recent disability determination with the current severity of that impairment." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 307 (3d Cir. 2012) (citing 20 C.F.R. § 404.1594(b)(7), (c)(1)); *see also Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) ("[w]ithout such comparison, no adequate finding of *improvement* could be

rendered"); *Veino v. Barnhart*, 312 F.3d 578, 586-87 (2d Cir. 2002) (holding that an ALJ's decision is not supported by substantial evidence when the ALJ failed to compare medical records). So, when an ALJ fails to compare medical records between a claimant's current impairments and the records used by the ALJ to make an initial disability determination, courts routinely remand the issue back the Commissioner so they can make an adequate comparison. *E.g.*, *Hemingway v. Comm'r of Soc. Sec.*, No.19-cv-18387, 2020 U.S. Dist. LEXIS 242795, at * 7 (D.N.J. Dec. 23, 2020); *Walters v. Saul*, 452 F.Supp.3d 164, 177-179 (M.D. Pa. 2020) (report and recommendation adopted by 2020 WL 1531369 (M.D. Pa. Mar. 31, 2020)); *Delgado v. Kijakazi*, No. 20-cv-4491, 2021 WL 5631773, at * 4-5 (M.D. Pa. Dec. 1, 2021).

As applied here, ALJ Wolfe clearly did not compare Plaintiff's current medical records with the medical records that were used to formulate ALJ Brady's 2011 decision. In fact, it would have been difficult to do so because ALJ Wolfe only had four pieces of evidence that underpinned ALJ Brady's 2011 decision. In the record, there is only four pieces of evidence from 2010 to 2011:

(1) medication records from CVS Pharmacy, (Admin. Tr. 832, Doc. 13-12, p. 112) and Walgreens (Admin. Tr. 800, Doc. 13-12, p. 80);
(2) results from blood tests taken on December 8, 2010 (Admin. Tr. 746-50, Doc. 13-12, pp. 26-30);
(3) medical imaging results from a December 20, 2010 MRI (Admin. Tr. 606-611, Doc. 13-10, pp. 12-17); and

(4)  one set of treatment notes from a December 7, 2011 visit with a Geisinger physician assistant (Admin. Tr. 750-51, Doc. 13-12, pp. 30-31).

These four pieces of evidence are a small fraction of evidence that was presented to ALJ Brady in 2011. In his 2011 bench decision, ALJ Brady cited to medical records from Plaintiff's three neurologists, primary care physicians, and ear, nose and throat physicians. (Admin. Tr. 237, Doc. 13-4, p. 37). But none of these physicians' notes are in the record.[5] ALJ Brady also stated that he placed "preponderant weight" to Jennifer Beams' medical opinion, but that opinion is not in the record. (*Id.*). Without most of the evidence that ALJ Brady considered in 2011, I fail to see how ALJ Wolfe could have made a reasoned comparison of the record.

Further, in reading ALJ Wolfe's opinion, she cites extensively to recent medical records (2012 to 2018). But the Court fails to understand how this shows an

---

[5] The Commissioner argues that ALJ Wolfe had these records and cites to a list of evidence that ALJ Brady based his decision on. (Doc. 19, pp. 20-21 (citing Admin. Tr. 204-06, Doc. 13-4, pp. 4-6)). The contents of the evidence are not specified, it is merely a list. The Commissioner further argues that ALJ Wolfe merely had to examine them before writing her opinion and was not obligated to exhibit them into the record. (*Id.*). I strongly disagree with this position. How can an ALJ compare, analyze, and cite to evidence if it's not exhibited? *See Ambler v. Saul*, No. 18-cv-553, 2020 WL 733183, at * 11 (E.D.N.C. Jan. 24, 2020) ("a disability hearing officer's summary of evidence . . . is not evidence and may not form the basis for the ALJ's finding of medical improvement."). Are federal courts supposed to blindly take the Commissioner's word that the ALJ silently and correctly compared evidence in a medical improvement case? Further, the Commissioner's argument is also undermined by the fact that the ALJ only cites medical records that are exhibited in the record. The Commissioner's argument is without merit.

*improvement* in Plaintiff's symptoms. ALJ Wolfe's opinion seems more like a decision she would issue if this were an original disability application, and she believed that Plaintiff had the RFC to perform work. But she failed to answer the separate question of whether Plaintiff's condition improved, an essential aspect of a continuing disability case.

ALJ Wolfe also cites routinely to Plaintiff's conservative treatment, *i.e.*, refusing a psychiatric evaluation and sporadic visits with neurologists. But I fail to see how conservative treatment shows that Plaintiff's symptoms improved, rather, it only shows that her condition is stable. *Barrett v. Saul*, No. 19-cv-2690, 2020 WL 8669806, at * 25-26 (E.D. Pa. Nov. 10, 2020) (report and recommendation adopted by 2021 WL 735725 (E.D. Pa. Feb. 25, 2021)) ("[n]or do we see how . . . "conservative" treatment . . . can be interpreted as symptom *improvement*.").

Finally, I acknowledge that ALJ Wolfe cites older medical records, but she does so in a cursory fashion. In the first instance, she describes that there is 2010 medical evidence in the record. (Admin. Tr. 69, Doc. 13-2, p. 70) ("the claimant submitted Exhibit B12F, which has 2010, 2012, and 2013 records . . . ."). She does not discuss what those medical records say. In the second instance, she acknowledges that the record has Plaintiff's 2010 blood test findings. (Admin. Tr. 71, Doc. 13-2, p. 72) ("In terms of Exhibit B17F, there are old records again, including 2010 lab findings . . . ."). Again, she does not describe the contents of

those findings. In both instances ALJ Wolfe acknowledges the existence of older medical records but does not engage and compare them in anyway. Simply noting the existence of medical records is not the type of comparison contemplated by regulations and case law.

In sum, the ALJ's decision "reads less like a finding a medical improvement, and more like a finding of no disability in the first instance." *Hemingway*, 2020 U.S. Dist. LEXIS 242795, at * 10. This case will be remanded back the Commissioner so she can perform a proper comparison of the record.

V.   CONCLUSION

For the aforementioned reasons, Plaintiff's request for the Commissioner's decision to be vacated, and remanded for a new hearing will be granted as follows:

(1) The final decision of the Commissioner is VACATED.

(2) Final judgment will be issued in favor of Christa Chmarney.

(3) A separate Order will follow.

(4) The Clerk of Court should close this case.


Date: March 7, 2022					BY THE COURT

							*s/William I. Arbuckle*
							William I. Arbuckle
							U.S. Magistrate Judge